IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MALIK NGUMEZI,

Defendant.

Case No. 18-cr-00358-CRB-1

**ORDER DENYING MOTION TO SUPPRESS**

## I.    INTRODUCTION

On May 6, 2018, police officers in San Francisco arrested Defendant Malik Ngumezi after impounding and searching his car without a warrant and finding a loaded handgun.  (Mot. at 2; Opp. at 1.)  Defendant moves to suppress all the evidence found in this search on the ground that the search violated the Fourth Amendment.  (See generally Mot.; Reply.)  Because the Court finds that the police officers had reasonable suspicion to conduct the search, the Motion to Suppress is DENIED.

## II.    BACKGROUND

At about 3:15 a.m. on May 6, 2018, Defendant was in a car at a gas station in San Francisco.  (Opp. Ex. A at 2.)  A San Francisco police officer, Kolby Willmes, conducted a traffic stop upon noticing that Defendant's car had paper plates.  (Reply at 5; Surreply at 4–5.)  Affixed to the window on the lower passenger-side of the car was a "bill of sale."  (Reply Ex. A ¶ 23; Reply Ex. B ¶ 5.)  What happened next is disputed by the parties.

According to Defendant, Willmes approached the passenger-side door of the car Defendant was in and opened it. (Reply Ex. A ¶ 11.) Defendant states that Willmes then "leaned in through the now-open passenger-side door and asked" if he "had registration and a driver's license." (Id. ¶ 15.) By the Government's account, Willmes does not recall whether he was leaning into the car at that time or not. (Surreply Ex. 1 ¶ 2; see also Mot. Ex. A at 2 (SFPD Incident Report).) Willmes asked Defendant if he had a California Driver's license, to which Ngumezi replied, "[w]hy?" and then provided a California Identification Card. (SFPD Incident Report at 2.) Willmes then asked Defendant if he had a suspended license and Defendant replied "[y]eah." (Id.) The Government also indicates that Defendant "was unable to provide current registration . . . or proof of insurance." (Id.)

According to Defendant, by contrast, Willmes asked if he had "registration and a driver's license." (Reply Ex. A ¶ 15.) Defendant responded that he had "registration papers" and gave Willmes a blue folder. (Id. ¶ 21.) In the blue folder were "documents relating to the purchase of [the] car, as well as valid registration papers." (Id. ¶ 23.) That registration matched the bill of sale on the windshield. (Id.) Defendant does not indicate if or at what point he provided any identification, although he does acknowledge he was asked for it. (See Mot. at 2.) He also acknowledges that at 3:20 a.m.—minutes after the encounter began—another officer, Kyle Cagney, ran a license check and determined that Defendant's license was suspended. (Id. at 2–3; Opp. at 2.) The officers also determined that Defendant had three prior citations for driving without a license. (Surreply Ex. 1 ¶ 4.)

Thereafter, the officers determined that Defendant "was in violation of both [California Vehicle Code] § 5200(a) (the requirement that he display plates) and [California Vehicle Code] § 14601.1(a) (prohibiting the unlicensed operation of a motor vehicle)." (Opp. Ex. A ¶ 3.) The officers asked Defendant to step out of the car so they could impound it, conduct an inventory search, and tow the vehicle. (Id. ¶ 6; see also Opp. Ex. A (Willmes Decl.) Ex. B (SFPD General Order 9.06); Opp. Ex. A (Willmes Decl.) Ex. A (SFPD vehicle tow policy).)

During the inventory search, Defendant alleges that the officers found a blue folder—the one containing his car's registration and purchase information. (Mot. at 5; Reply at 7.) Defendant argues that the folder and its contents "were placed" in the trunk of the car—presumably by an officer—while Defendant was being handcuffed. (Mot. at 6.) Willmes has stated that "[a]lthough [he does] not have a specific recollection of the folder, [he] believe[s] it is likely that Ngumezi handed [him] the folder during [their] initial interaction, and that [he] placed it on the trunk." (Opp. Ex. A ¶ 12.) That folder was not produced during discovery and has apparently been lost. (Mot. at 6; Reply at 2.) The officers also found a loaded handgun underneath the driver's seat of the car. (Mot. Ex. A at 2.) The officers then ran a background check which revealed that Defendant was part of a gang known as the "Oakland Mob" and had a felony record. (Id. at 3.) Defendant was charged with violation of 18 U.S.C. § 922(g) (felon in possession of a firearm). (Indictment)

Defendant now moves to suppress the evidence obtained in this car search on the ground that the search of his car violated the Fourth Amendment. (Mot.) Because Defendant's Motion to Dismiss must be denied even on his version of the facts, the Court assumes for the sake of this Order that Defendant's facts are correct.

### III.    LEGAL STANDARD

Police officers may stop a vehicle where there is reasonable suspicion that a crime has been committed without running afoul of the Fourth Amendment. United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006). Reasonable suspicion that an individual is engaged in criminal activity exists "when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion" that the person in question has committed a crime. United States v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000) (emphasis in original); see United States v. Burkett, 612 F.3d 1103, 1107 (9th Cir. 2010). The determination is based on the "collective knowledge" of all the officers involved, not just the officer who

undertakes the challenged action.  <u>United States v. Ramirez</u>, 473 F.3d 1026, 1032 (9th Cir.

2007).  "A traffic violation alone is sufficient to establish reasonable suspicion."

<u>Choudhry</u>, 461 F.3d at 1100.

The Ninth Circuit has also held that the purpose of such an investigatory stop is to

"allow the officer to confirm or deny . . . suspicions by reasonable questioning."  <u>United</u>

<u>States v. Hickman</u>, 523 F.2d 323, 327 (9th Cir. 1975).  Once reasonable suspicion is

created, it can be dispelled when "additional or subsequent facts . . . negate the suspicion"

that a crime has occurred.  <u>Thomas v. Dillard</u>, 818 F.3d 864, 877 (9th Cir. 2016), as

amended (May 5, 2016).  For example, the Ninth Circuit has held that where an officer had

reasonable suspicion to stop a driver who resembled a suspect of a crime and who was near

the scene of the crime, reasonable suspicion was dispelled when it became clear that the

driver did not match the suspect's description.  <u>See</u> <u>United States v. Thomas</u>, 863 F.2d 622,

626–30 (9th Cir. 1988). If, on the other hand, the investigatory search produces evidence

that creates probable cause that someone has committed a crime, police officers may then

arrest the individual.  <u>See</u> <u>Dillard</u>, 818 F.3d at 874.

In addition, "the impoundment of an automobile is a seizure within the meaning of

the Fourth Amendment."  <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 862 (9th Cir. 2005).

Because the police lacked a warrant in this case, "[t]he government bears the burden of

establishing that [the] vehicle's impoundment and search are justified under an exception

to the warrant requirement."  <u>United States v. Torres</u>, 828 F.3d 1113, 1118 (9th Cir. 2016).

"An impoundment may be proper under the community caretaking doctrine if the driver's

violation of a vehicle regulation prevents the driver from lawfully operating the vehicle,

and also if it is necessary to remove the vehicle from an exposed or public location."

<u>Miranda</u>, 429 F.3d at 865.  When police impound a car, they may search it "so long as they

do so in conformance with the standardized procedures of the local police department and

in furtherance of a community caretaking purpose, such as promoting public safety or the

efficient flow of traffic."  <u>Torres</u>, 828 F.3d at 1118.

## IV. DISCUSSION

The parties agree that Willmes had reasonable suspicion to conduct a traffic stop when he saw the paper plates on Defendant's car. (Reply at 5); see People v. Dotson, 179 Cal. App. 4th 1045, 1052 (2009) (holding that under California law at the time, "[a]bsence of license plates provides reasonable suspicion that the driver is violating the law."). The parties also agree that the officers had probable cause to arrest Defendant and impound and tow his car pursuant to San Francisco Police Department policy upon learning Defendant had a suspended license, and that the officers complied with SFPD policy in towing the car. (See Surreply at 4–5; Reply at 5; see generally Mot.; Reply.) The parties' dispute thus turns on the narrow question whether, in the short interval between when the officers approached the car and when they learned that Defendant had a suspended license, reasonable suspicion was dispelled, thereby rending the rest of their traffic stop[1] unlawful under the Fourth Amendment. (See Reply at 7; Surreply at 5.)

To dispel reasonable suspicion that the car was not properly registered, Willmes would have had to confirm that the vehicle was properly registered. See Thomas, 818 F.3d at 877. However, if in the process of his inquiry Willmes discovered new information creating reasonable suspicion of criminal activity, continued detention of Defendant would be justified even if the initial reasonable suspicion was dispelled. See United States v. Rojas-Millan, 234 F.3d 464, 469–70 (9th Cir. 2000) (holding that even though the officer's initial reasonable suspicion was dispelled, the officer's continued detention of the defendant was justified because the stop created new reasonable suspicions of criminal activity).

According to Defendant, the officers lacked probable cause to impound and search the car, and thus the gun they found was pursuant to an unlawful search and must be suppressed. (Mot. at 9.) Specifically, Defendant argues that when Willmes opened the car door and leaned in, reasonable suspicion was dispelled because at that point Willmes "was

---

[1] There is no dispute between the parties that this interaction was a traffic stop, even though Defendant was not driving when Willmes approached the car. (See Surreply at 4–5; Reply at 5.)

in eyesight of the proof of sale affixed to the front right-side windshield." (Reply at 5–6.) At that point, he argues, it would have been clear to Willmes that the car had proper registration, thus dispelling reasonable suspicion. (<u>Id.</u>) In the alternative, he argues that any question regarding the proper registration of the car was resolved when Defendant gave Willmes a folder with the registration materials for the vehicle. (<u>Id.</u> at 6.)

Neither argument is meritorious. First, because there is no evidence that Willmes saw the bill of sale, reasonable suspicion was never dispelled. Defendant concedes that Willmes "had articulable facts and reasonable suspicion to approach the vehicle, when he saw the paper plates." (Reply at 5.) Defendant argues that reasonable suspicion was dispelled by the existence of the proof of sale affixed to the window on the passenger side. (<u>Id.</u>) But, reasonable suspicion inquiry is based on what the officer is <u>aware of</u>, and therefore reasonable suspicion cannot be dispelled by facts unknown to the officer. <u>See</u> <u>Montero-Camargo</u>, 208 F.3d at 1129. And Defendant does not allege that Willmes actually saw the proof of sale, only that it was in his line of sight. (<u>See</u> Reply at 5; Reply Ex. A ¶ 18) But nothing about that fact, alone, provides a basis for the conclusion that Willmes actually saw the proof of sale in his short interaction with Defendant. Indeed, Defendant does not even allege whether the text side of the proof of sale faced into the vehicle—such that Willmes could have seen the text printed on it—or out of the vehicle. (<u>See generally</u> Mot.; Reply) Nor does Defendant allege which direction Willmes approached the vehicle from, that is, whether Willmes would have walked past the window on route to the passenger door. (<u>See generally</u> Mot.; Reply) Without any evidence, or indeed even the assertion, that the officer in fact <u>actually</u> saw the proof of sale, its existence could not have factored into his analysis of the situation and thus could not have dispelled his reasonable suspicion. <u>See</u> <u>Burkett</u>, 612 F.3d at 1107. As such, Willmes continued to have reasonable suspicion to continue the traffic stop.

Defendant also argues that the reasonable suspicion that existed because of the paper license plates vanished when Defendant "handed the officer a folder that contained the registration materials for the vehicle." (Reply at 6.) But Defendant fails to address the

fact that Willmes asked Defendant for proof of registration <u>and</u> a driver's license, to which Defendant admitted his license was suspended. (SFPD Incident Report at 2; <u>see generally</u> Mot.; Reply.) At that point, even though Defendant's registration was valid, the basis for reasonable suspicion shifted to his lack of a valid license. <u>See</u> <u>Rojas-Millan</u>, 234 F.3d at 469–70. Thus, once it became clear that Defendant did not have a valid license, "Willmes learned that defendant had committed a new crime—namely, driving without a valid license in violation of [California Vehicle Code] § 14601.1(a)." (Surreply at 6 (citing Willmes Supp. Dec. ¶ 4).) At that point, Willmes had probable cause to impound and search the car. <u>Cf.</u> <u>Rojas-Millan</u>, 234 F.3d at 469–70. So, at no point was reasonable suspicion dispelled. Thus, the search, and the evidence obtained from it, did not violate the Fourth Amendment.[2]

## V.    CONCLUSION

Because reasonable suspicion was never dispelled because Defendant offers no evidence that Willmes was actually aware of the bill of sale on the window, and Defendant's admission that he was driving without a valid license provided probable cause to believe that he had violated California Vehicle Code, the Motion to Suppress is DENIED.


**IT IS SO ORDERED.**

Dated: March 6, 2019

CHARLES R. BREYER
United States District Judge

---

[2] Defendant also makes much of the facts that the blue folder was lost and that the officers did not turn on their body cameras until several minutes into the stop, (<u>see</u> Mot. at 3), and that the blue folder that Defendant contends contained his registration has not been produced, (<u>see</u> <u>id.</u> at 6). But Defendant fails to explain why these facts are relevant to the Fourth Amendment analysis.